**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| JUSTIN TROUT, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MEIJER, INC.,<br><br>Defendant. | **Civil Action No.: 1:25-cv-1378**<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Justin Trout ("Plaintiff"), individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Meijer, Inc. ("Meijer" or "Defendant") based upon personal knowledge with respect to himself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

**NATURE OF THE ACTION**

1. It is both unfair and unlawful for entities like Meijer to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products. This lawsuit challenges Defendant's unlawful practice of charging a "tobacco surcharge" without complying with the regulatory requirements under the Employee Retirement Income Security Act of 1974 ("ERISA") and the implementing regulations. ERISA permits health-contingent wellness programs only if participants are offered a clearly disclosed, reasonable alternative standard that allows *every* similarly situated individual to obtain "the same, full reward," including retroactive refunds for surcharges paid while completing that alternative. *See* 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(3)(D). A single defect, whether in design, timing, or disclosure, can disqualify

a program from ERISA's statutory safe harbor, rendering the wellness program noncompliant and the surcharge discriminatory.

2. Meijer's program fails that test repeatedly. The Company buried the overarching terms governing the tobacco surcharge program in a dense, 100-plus-page Summary Plan Description ("SPD") that few employees ever see, while distributing short, colorful "Benefit Guides" as the operative materials during open enrollment. Those Benefit Guides—precisely the documents employees rely on to make coverage decisions—omit critical information regarding participants' rights. The inconsistency is not harmless; it violates ERISA and leaves participants in the dark about their rights, when the law demands absolute clarity "in ***all*** plan materials describing the terms of the program." 29 C.F.R. § 2590.702(f)(4)(v). An employer providing notice in the formal SPD but omitting key information from the materials employees actually read still violates the rules. ERISA's exception for wellness programs is narrow for a reason, and Meijer's failure to meet the necessary criteria disqualifies its surcharge from that protection, making it a straightforward violation of federal law.

3. Tobacco surcharges have become more prevalent in recent years but to be lawful plans must make available a *compliant* "wellness programs" that provides employees with an avenue to avoid the surcharge. Making a compliant wellness program available means employers ***must*** adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have developed a regulatory framework that "must be satisfied" to qualify for the statutory exception or safe-harbor. Employers can only

invoke this safe harbor if they can demonstrate full compliance with all the requirements. Moreover, while courts are no longer required to defer to an agency's interpretation of an ambiguous *statute* under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), courts must still defer to an agency's interpretation of its own *regulations*, if that interpretation is neither plainly erroneous nor inconsistent with the regulatory framework. *Auer v. Robbins*, 519 U.S. 452 (1997); *Kisor v. Wilkie*, 588 U.S. 558 (2019).

4. ERISA's strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of wellness programs that are "subterfuge[s] for discriminating based on a health factor."[1] The Final Regulations establish that for plans to be compliant, they must provide a clearly defined, reasonable alternative standard that allows participants to obtain the "full reward," including retroactive reimbursement of surcharges paid while completing the alternative standard. *See id.*, 33159–63. First and foremost, a wellness program must be genuinely designed to improve health or prevent disease, rather than functioning as an improper penalty imposed on certain participants under the guise of a health initiative. Defendant' Plan fails to clearly establish a *reasonable* alternative standard that properly informs employees of their right to avoid the surcharge, imposes a roughly $20 weekly surcharge on all nicotine users, does not notify employees of their rights to a physician-directed alternative to avoid the surcharge in all Plan materials, does not ensure that all employees who complete the alternative receive the "full reward," and unlawfully shifts costs onto employees in violation of ERISA's wellness program regulations.

---

[1] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**").

5. The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[2] The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements

6. Outcome-based programs,[3] such as being tobacco-free or completing a smoking cessation program, must offer a clearly defined "*reasonable* alternative standard," which is an alternative way for "all similarly situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan

[2] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

[3] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

year.[4] The Department of Labor ("DOL") has made clear that participants should not be forced to rush through the program under the threat of continued surcharges and that every individual participating in the program must receive the same reward as provided to non-smokers. *Id.* The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual participating in the program*** should be able to receive ***the full amount of any reward or incentive*** . . . ." *Id.*, 33160 (emphasis added). Defendant violates these requirements by failing to provide a reasonable alternative standard that provides full reimbursement to all employees who complete it, operating a non-compliant penalty structure rather than a lawful wellness incentive, and failing to clearly notify participants, in key, participant-facing documents, of all the avenues available to them to avoid the surcharge. *Id.* These failures constitute direct violations of ERISA's wellness program regulations.

7. Defendant cannot qualify for the statutory safe harbor because, while it imposes a health-based surcharge, Meijer fails to operate a compliant wellness program or provide proper notice to participants. The Plan fails to satisfy the essential regulatory criteria, which "***must*** be satisfied," (*Id.*, 33160; emphasis added) for a wellness program to be lawful under ERISA. Final Regulations, 33160. This is not a flexible standard; it is a strict exception that allows employers to discriminate against participants by charging them hundreds of dollars annually. Therefore, even

---

[4] *See* Final Regulations, 33163 ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual*** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

a minor design or disclosure defect can remove the program from the narrow safe harbor and render the surcharge unlawful.

8. The core deficiency of Defendant's wellness program is that it does not offer a reasonable alternative standard that makes available the "full reward" to ***all*** participants who complete it, as explicitly required by 42 U.S.C. § 300gg-4(j)(3)(D) and 45 C.F.R. § 146.121(f)(4)(iv). While the Plan offers a smoking cessation program, it imposes arbitrary timing conditions that impact the value of what participants receive upon completion. The Department of Labor has expressly rejected this kind of timing-based conditioning of the reward for outcome-based wellness programs. Federal rules require that every similarly situated individual who completes a reasonable alternative standard receive the "same, full reward" for the plan year, even if the alternative is satisfied midyear. Making the size or availability of the reward depend on when during the plan year the individual finishes the program—by limiting relief to prospective removal of the surcharge—violates those requirements. Defendant's policy is exactly that: participants who miss the initial enrollment deadlines receive no make-whole relief and are limited to prospective-only removal, depriving them of the full reward solely because of timing. This is per se noncompliant.

9. Further, Defendant failed to provide proper notice in all Plan materials, which is a standalone violation of 42 U.S.C. § 300gg-4(j)(3)(E) ("The plan or issuer involved shall disclose in ***all*** plan materials describing the terms of the wellness program the availability of a reasonable alternative standard." (emphasis added)). The Benefit Guides—the operative documents for enrollment—omit the required statement that participants' personal physicians' recommendations will be accommodated in establishing a reasonable alternative standard. *See* Final Regulations, 33166 ("a plan disclosure that references premium differential based on tobacco use . . . must

include this disclosure”). These notice violations alone disqualify Defendant from asserting an affirmative defense in response to Plaintiff's allegations that its tobacco surcharge is discriminatory. Because Defendant cannot qualify for the statutory exception, the tobacco surcharge they impose on participants is unlawful and discriminatory in violation of ERISA.

10. This Complaint alleges that Defendant imposes a health-based tobacco surcharge without making available a compliant alternative standard to avoid the surcharge. Defendant bears the burden of proving that their tobacco surcharge is lawful by showing that their wellness program fully complies with ***every*** requirement under ERISA, including making available a reasonable alternative standard that allows ***all*** participants who satisfy the alternative standard to receive the full reward. This type of discrimination is permissible only if employers meet ERISA's strict wellness program criteria, which Defendant does not. No amount of *post hoc* justifications can cure this fundamental defect. Defendant's Plan is not a “program[] of health promotion or disease prevention” as required by ERISA but instead an impermissible cost-shifting scheme that unlawfully penalizes employees for their health status.

11. Participants like Mr. Trout are, in the least, permitted to challenge not only the arbitrary restrictions that Defendant has placed on obtaining the “full reward,” but also the failure of an employer to include critical information about participants' rights in the actual materials that are shown to them during enrollment. Once a participant alleges that a surcharge violates ERISA's anti-discrimination provisions and alleges facts to support the deficiency in the wellness program, the burden shifts to the employer to demonstrate that its wellness program fully satisfies all the statutory and regulatory criteria, including the obligation to make available the “full reward” and to notify participants of the same. *See Cunningham v. Cornell Univ.*, 145 S. Ct. 1020, 1029 (2025) (reaffirming “that ‘the burden of persuasion as to certain elements of a plaintiff 's claim may be

shifted to defendants, when such elements can fairly be characterized as affirmative defenses or *exemptions*.'").

12. Plaintiff is an employee of Meijer who paid, and continues to pay, the unlawful tobacco surcharge to maintain health insurance coverage under the Plan. This surcharge imposed an additional financial burden on Plaintiff and continues to impose such a burden on those similarly situated.

13. Plaintiff brings this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent Meijer from continuing to profit from its violations under 29 U.S.C. § 1109. Under 29 U.S.C. § 1109, Meijer is a fiduciary of the Plan who has a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiff, on behalf of himself and the Plan as a whole, seeks appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

## PARTIES

14. Plaintiff Justin Trout is, and at all times mentioned herein was, an individual citizen of the State of Illinois residing in the County of Will. Plaintiff is an employee of Meijer, who paid a tobacco surcharge of $20 per week (roughly $1,040 annually). Plaintiff was required to pay this tobacco surcharge to maintain health insurance under the Plan.

15. Plaintiff is a participant in the Plan pursuant to 29 U.S.C. § 1002(7).

16. Defendant Meijer is a privately held corporation organized under the laws of the State of Michigan, with its principal place of business located in Grand Rapids, Michigan. Meijer operates a chain of supercenters and retail stores offering groceries, pharmacy services, and general

merchandise throughout the Midwest, including locations in Illinois, Indiana, Ohio, and other states. Meijer is the plan sponsor and administrator of the Plan. Meijer is a fiduciary of the Plan.

17. At all times relevant to this lawsuit, Defendant sponsored, maintained, and managed the Plan. Meijer employs roughly 70,000 individuals worldwide. As of February 2024, there were over 29,000 participants in the Plan. Defendant's employee benefit plan is subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1002(3).

## JURISDICTION AND VENUE

18. The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, as this suit seeks relief under ERISA, a federal statute. Upon information and belief, the number of class members is over 1,000, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

19. This Court has personal jurisdiction over Defendant because it is headquartered in this District. Defendant has purposefully availed itself of the privilege of conducting business in Michigan.

20. Venue is proper in this District under 29 U.S.C. § 1132(e)(2) because Defendant is headquartered in this District and this is a District in which Defendant may be found.

## FACTUAL BACKGROUND

### I. DEFENDANT'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE

#### A. Statutory and Regulatory Requirements

21. To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a

condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1); 42 U.S.C. § 300gg-4(b)(1).

22. The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to ***programs of health promotion and disease prevention***" (29 U.S.C. § 1182(b)(2)(B) (emphases added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

23. Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

24. Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the ACA and Public Health Service

Acts, in 2010, the Departments published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

25. The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the statutory safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge along with facts showing that the alternative standard offered to them is deficient, the burden then shifts to the employer to prove that the wellness program satisfies *all* the necessary criteria.

26. The criteria in the Final Regulations are not optional. They serve as the only lawful pathway for plans to impose health-based premium differentials by ensuring that wellness programs do not arbitrarily penalize participants and they prevent employers from using surcharges as a revenue-generating mechanism rather than a genuine tool for health promotion. If a wellness program fails to meet even one of these stringent requirements, the program is noncompliant and the employer cannot benefit from the statutory carve-out. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section ***only if <u>all</u> of the [] requirements are satisfied***.").

**B. Regulatory Criteria**

27. To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii)

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii)).

(d) Uniform availability and reasonable alternative standards: "The full reward under the outcome-based wellness program must be available to all similarly situated individuals." § 2590.702(f)(4)(iv).

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

28. The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

29. Regarding the first criteria, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

30. A key requirement of the fourth criterion for outcome-based programs is that the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual*** participating in the program should be able to receive the ***full amount of any reward or incentive***. . . ." *Id.* (emphases added). While plans have flexibility in determining the manner in which they provide the "full reward," providing the "full reward" to every participant is ***mandatory***, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine ***how*** to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) ***as long as . . . the individual receives the full amount of the reward***.

Final Regulations, 33163 (emphases added).

31. The Final Regulations provide an example of a non-compliant plan that imposes a tobacco use surcharge but does not facilitate the participant's enrollment in or participation in a smoking cessation program. *See id.*, Example 8. Instead, the employer advises the participant to find a program, pay for it, and provide a certificate of completion. *Id*. The Final Regulations conclude that the plan is not compliant because it "has not offered a reasonable alternative standard . . . and the program fails to satisfy the requirements of paragraph (f) of this section." *Id*.; Final Regulations, 33180.

32. For health contingent wellness programs, the Final Regulations require the notice be disclosed "in ***all*** plan materials describing the terms of" the program. 42 U.S.C. § 300gg-4(j)(3)(E); 45 C.F.R. § 146.121(f)(4)(v) (emphasis added). Further, the Final Regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Plans that charge their participants more and fail to inform participants of their rights in ***all*** plan materials violate the notice rule.

## II. DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR

33. Defendant tobacco surcharge is discriminatory because Defendant fails to make available a compliant wellness program that would allow participants to avoid the entire surcharge. Meijer imposes a $20 weekly "tobacco surcharge" on participants who use tobacco and are enrolled in the Plan. Defendant's SPD makes clear that participants who do not certify as tobacco-free during open enrollment may "still avoid the surcharge for the entire Plan Year by completing

a qualified tobacco cessation program," but only if they meet plan-imposed timing conditions; otherwise, completion during the year results in *prospective* relief only. The SPD states that if a participant (and, if applicable, a spouse/domestic partner) fails to make the certification during open enrollment, the surcharge "can still [be] avoid[ed] for the entire Plan Year by completing a qualified tobacco cessation program." For newly eligible employees, the SPD conditions the full-year relief on enrolling in a program "within two months" of coverage and "completing" it "within six months" of coverage. Outside those windows, the SPD provides that "if during the course of the Plan Year" the individual "complete[s] a tobacco cessation program or other reasonable alternative (after the above deadlines) … the tobacco-free surcharge can be avoided prospectively, at that time." The Tobacco Surcharge section in the SPD is buried on page 27 of a 121-page, single-spaced document, while the Benefit Guides are what employees actually see. And, despite the law requiring that both provide all the required information, the two do not match. The SPD contains dense legal language that rarely reaches participants, while the Benefit Guides strip out key details about the surcharge and avenues for avoiding the surcharge, leaving employees in the dark about their rights.

34. The Benefit Guides fail to comply with ERISA's notice rules. The Benefit Guides describe the surcharge as "$1,040–$2,080 per year for tobacco users" and state that if participants "complete the [cessation] program requirements by the deadlines, your tobacco surcharge *may* be refunded." (Emphasis added.) That phrasing misleads employees into believing that any refund is discretionary or contingent on Meijer's approval, rather than mandatory upon completion of a reasonable alternative standard as required by ERISA and 42 U.S.C. § 300gg-4(j)(3)(D). The use of the word "may" conveys that refunds are optional or exceptional, not an entitlement. This ambiguity is material: participants are left uncertain whether they can ever recover the surcharges

deducted from their paychecks, particularly if they complete the cessation program after the plan-imposed "deadlines." Under 29 C.F.R. § 2590.702(f)(4)(v), Meijer was required to provide a clear, consistent notice—"in all plan materials describing the terms of the program"—that completion of a reasonable alternative standard entitles participants to the *same, full reward.* Instead, the materials emphasize prospective-only relief outside narrow windows and repeatedly lean on "deadlines" that undercut the value of what participants receive, which the Departments have explicitly disallowed. The following is the Tobacco Surcharge section from the Benefit Guide:

> **Tobacco Surcharge:** $1,040 - $2,080 per year for tobacco users
>
> If you (and your spouse/domestic partner) enroll in a Meijer medical plan and use tobacco, the $20 per week surcharge will apply per tobacco user. If you are not a tobacco user, recertification is required every year on the Meijer Rewards site. Meijer also offers a tobacco cessation program – at no cost to enrolled team members (and their spouse/domestic partner). If you complete the program requirements by the deadlines, your tobacco surcharge may be refunded.

35. As shown, there is no mention in the Benefit Guides of the required statement that participants' personal physicians' recommendations will be accommodated in establishing a reasonable alternative standard, or clear instructions and contact information for accessing such alternatives. The Benefit Guides—the operative documents for enrollment—do not explain how to access the reasonable alternative standard or how to invoke the physician-directed alternatives or how accommodations interact with surcharge refunds. Omitting these required notices "in all plan materials" independently violates ERISA's wellness program rules.

36. Defendant compounds these violations by imposing prospective-only corrections for defaulted participants who later attest they are non-tobacco users. The SPD states that if a team member fails to make a timely election and is defaulted into their current election, "it will be assumed that the team member (and his or her spouse/domestic partner if applicable) uses tobacco products and as a result, will be subject to the tobacco surcharge. If the defaulted team member later reports he/she/they is/are not a tobacco user, the surcharge can be avoided on a prospective

basis for the balance of the Plan Year." This policy imposes a surcharge on non-users who should never have been charged and refuses to provide the same reward non-users receive (i.e., retroactive elimination and refund of the surcharge for the period of erroneous default). That practice violates the full reward rule and results in discriminatory premium differentials for similarly situated individuals (non-users), based solely on administrative default status. It is no answer to say that defaulted participants may correct their status prospectively; the rules require the same, full reward, not a diminished, time-prorated outcome.

37. Taken together, Defendant's tobacco surcharge program is structured and communicated as a punitive premium differential that (i) conditions the full reward on arbitrary deadlines, (ii) withholds the required retroactive, make-whole relief for participants who complete a reasonable alternative later in the year, (iii) fails to disclose, in the Benefit Guides participants actually rely on, the availability of physician-directed accommodations and instructions for accessing them, (iv) and limits corrections for defaulted non-users to prospective-only relief. Federal law requires that "every individual participating in the program should be able to receive the full amount of any reward or incentive," without diminution based on when during the plan year the alternative is satisfied. Defendant's practice of granting only prospective relief cannot be squared with those requirements.

38. Defendant should not have imposed arbitrary restrictions undermining the value of what similarly situated individuals receive upon completion of an alternative standard. Further, Defendants should have included clear and explicit disclosure in the Benefit Guides and all other Plan communications discussing the surcharge of participants' right to have their physician involved in the development of an alternative standard. Had Meijer included that information in the documents participants actually rely on during enrollment, participants like Plaintiff could have

taken steps to avoid the surcharge. Meijer failed to include the notice, which should have included contact information to access the alternative standard along with a statement that the Plan would accommodate the recommendations of the participant's personal physician in designing an alternative standard and that participants. In other words, Meijer should have told participants of ***all*** the avenues they could take to avoid the surcharge, but it opted not to.

39. Because Defendant cannot satisfy the regulatory criteria that "***must*** be satisfied" to qualify for the statutory safe harbor for health-contingent wellness programs, its tobacco surcharge is unlawful and discriminatory under ERISA. The discrepancy between the SPD and the Benefit Guides, with the latter containing significantly less information, violated ERISA's disclosure standards and deprived participants of the information necessary to exercise their rights.

## III. DEFENDANT'S SELF-DEALING AND MISMANAGEMENT OF PLAN FUNDS

40. Defendant Meijer administered the tobacco surcharge by designating which participants would be charged and withholding the surcharge directly from participants' paychecks as a before-tax plan contribution, alongside required employee premium deductions. These deductions are part of the same funding stream that supports the Plan's medical benefits—not a separate penalty—and are treated identically to other participant contributions under the Plan's payroll and trust-funding structure.

41. The governing Plan documents confirm that Meijer's group health benefits are funded jointly by employer and participant contributions and that a trust fund has been established to pay Plan benefits. The Plan states that Meijer contributes to the trust to fund benefits and that participants may be required to contribute to the cost of coverage. Under ERISA, once participant contributions are withheld from wages, they become Plan assets and must be deposited into the

Plan's trust and administered solely in the interest of participants. The tobacco surcharge is an additional amount withheld as a payroll deduction, and, therefore, constitutes Plan funding subject to fiduciary duties of loyalty and prudence.

42. On information and belief, Meijer failed to deposit the tobacco-surcharge amounts into the Plan's trust in full and/or used those amounts to offset, dollar-for-dollar, its own required company contributions. Because the cost of coverage is fixed by tier, every surcharge dollar collected reduced Meijer's own funding obligation instead of augmenting the Plan's assets. Thus, rather than creating a third stream of funding available to pay Plan benefits, Meijer's administration of the surcharge simply shifted costs from the employer to participants. For example, Plaintiff's paystubs reflect a recurring "Tobacco Surcharge" deduction processed on a before-tax basis, alongside ordinary premium deductions, confirming its treatment as a participant contribution.

43. This practice constitutes classic self-dealing and a prohibited transaction under ERISA §§ 404 and 406. By diverting or offsetting participant contributions for its own benefit, Meijer dealt with Plan assets in its own interest and for its own account. The surcharge proceeds that should have been transmitted to and retained by the Plan instead reduced Meijer's out-of-pocket funding obligations and generated float and interest income for the company's own accounts. In doing so, Meijer failed to act solely in the interest of participants and beneficiaries and violated its fiduciary duties of loyalty, prudence, and adherence to Plan documents.

44. Even apart from this diversion, Meijer separately breached its fiduciary duties through the administration of the tobacco-surcharge program itself. The program conditions the "full reward" on rigid internal deadlines, offers only prospective relief for participants who complete a cessation program mid-year, and omits required disclosures from the materials

participants actually rely on during enrollment. By maintaining and communicating a noncompliant wellness program, and by failing to monitor the terms of the Plan and the wellness program, and correct these defects, Meijer acted imprudently and misled participants about their rights under ERISA.

45. In doing so, Defendant failed to act solely in the interest of participants and beneficiaries, as ERISA requires. Rather than use the surcharge proceeds to, for example, offset the premiums of non-smokers, Defendant used the funds to save money for itself. The money that Meijer did not have to contribute to the Plan sat in its accounts and earned interest, while the Plan was deprived of the full amount of funding it should have received, stripping the Plan of employer dollars it was owed and converting those savings into financial benefit for Meijer. This diversion of funds is self-dealing, violates the duty of loyalty, and constitutes a prohibited transaction under ERISA §§ 404 and 406.

## CLASS DEFINITION AND ALLEGATIONS

46. Plaintiff brings this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure.

47. Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

> **Tobacco Surcharge Class**
> All individuals residing in the U.S. who, from 2014 to the time of judgment, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendant.

48. Excluded from the Class are Meijer's officers and directors.

49. Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

50. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

51. **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of participants who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

52. **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a. Whether Defendant's tobacco surcharge discriminates against participants based on a health status related factor;

b. Whether the smoking cessation program constitutes a reasonable alternative standard by which all similarly situated participants receive the "full reward";

c. Whether Defendant provided proper notice in ***all*** the plan materials describing the surcharge;

d. Whether Defendant's wellness program violates ERISA and the Final Regulations;

e. Whether Defendant breached its fiduciary duties by collecting and retaining the tobacco surcharge;

f. Whether Defendant breached its fiduciary duties by failing to periodically review the terms of its wellness program and the communications sent to participants to ensure compliance with ERISA and applicable regulations;

g. The appropriate mechanisms to determine damages on a class-wide basis

53. **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharge. Moreover, Plaintiff's claims are typical of the Class members' claims because Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class. In addition, Plaintiff is entitled to relief

under the same causes of action and upon the same facts as the other members of the proposed Class.

54. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff and members of the Class each participated in health and welfare plans offered by Defendant and were harmed by Defendant's misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

55. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

56. Plaintiff seeks injunctive, declaratory, and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Meijer will be allowed to profit from its unfair

and discriminatory practices, while Plaintiff and the members of the Class will have suffered damages. Unless Class-wide injunctions are issued, Defendant may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL SURCHARGE – FAILURE TO PROVIDE A REASONABLE ALTERNATIVE STANDARD
### (Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA 2705, 42 U.S.C. § 300gg-4(j)(3)(D); 29 C.F.R. § 2590.702(f)(4)(iv); 45 C.F.R. § 146.121(f)(4)(iv))

57. Plaintiff re-alleges and incorporates herein by reference allegations 1–56 of this Complaint.

58. Defendant unlawfully impose a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory surcharges of $20 weekly on participants who use tobacco, without complying with the regulatory requirements, Defendant is violating ERISA § 702(b), 29 U.S.C. § 1182(b)(1). This discrimination stems from Defendant's decision not to provide a *reasonable* alternative standard that makes available to all participants who satisfy an alternative standard the "full reward," in violation of ERISA and the Final Regulations.

59. ERISA explicitly prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor." *See* 29 U.S.C. § 1182(b). Defendant's Plan violates this prohibition because it fails to offer a *reasonable* alternative standard because it ties the value of what participants receive to the time he or she completes the program, in violation of 42 U.S.C. § 300gg-4(j)(3)(D) and 45 C.F.R. § 146.121(f)(4)(iv).

60. Defendant fails to provide all participants who satisfy the alternative standard with the "full reward" required by law. Instead, Defendant imposes arbitrary and unlawful timing restrictions that diminish the value of the reward based solely on when during the Plan year a participant completes the program. Participants who complete the identical alternative standard later in the same Plan year receive only a *partial* reward, even though they made the same effort toward health promotion as those who finished earlier. These artificial deadlines—unsupported by statute or regulation—create unequal treatment among similarly situated individuals in violation of § 300gg-4(j)(3)(D) and § 146.121(f)(4)(iv). While employers retain discretion in when and how participants may *access* an alternative standard, that discretion does not extend to erecting conditions that cause two employees who both satisfy the same standard in the same Plan year to be treated differently. Any restrictions that diminish the *value* of what two similarly situated employees receive is unlawful under ERISA's wellness program rules. Final Regulations, 33160 ("The intention of the Departments in these final regulations is that … every individual participating in the program should be able to receive the full amount of any reward or incentive.").

61. Because participants who satisfy the alternative standard are not guaranteed the "full reward" for the entire Plan year upon completion, Defendant's practice of tying the value of the reward to the date of completion violates the full reward rule set forth in 29 C.F.R. § 2590.702(f)(4)(iv). These unlawful timing restrictions render the wellness program noncompliant with ERISA's nondiscrimination requirements and, consequently, make the tobacco surcharge itself discriminatory.

62. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations

or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's surcharge program does not satisfy the criteria that plans ***must*** comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe-harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

**COUNT II**
**UNLAWFUL SURCHARGE – FAILURE TO PROVIDE REQUIRED NOTICE**
**(Violation of ERISA § 702, 29 U.S.C. § 1182(b) and PHSA § 2705, 42 U.S.C. § 300gg-4(j)(3)(E); 29 C.F.R. § 2590.702(f)(4)(v); 45 C.F.R. § 146.121(f)(4)(v))**

63. Plaintiff re-alleges and incorporates herein by reference allegations 1–56 of this Complaint.

64. Defendant's tobacco surcharge program is not, and was not, a permissible wellness program because it failed to provide proper notice in ***all*** Plan materials, in violation of 29 C.F.R. § 2590.702(f)(4)(v).

65. Key Plan materials describing the surcharge did not have contact information to access the alternative standard and omitted the required statement that recommendations of an individual's personal physician would be accommodated in determining a reasonable alternative standard. This was not a de minimis or technical oversight, but an omission of critical information regarding participants' rights from the very documents employees rely on during open enrollment, the Benefit Guides. If Congress and the Departments had intended for employers to include these disclosures only in *some* plan materials, they would have said so. Instead, both the statute,42 U.S.C. § 300gg-4(j)(3)(D) and the Final Regulations,45 C.F.R. § 146.121(f)(4)(v), deliberately use the word "***all***" to ensure that employers could not "check the box" of compliance by burying key notices in dense SPDs that participants are rarely aware of. The law requires that these disclosures

appear in the actual materials participants use when electing coverage, precisely where Defendant chose to exclude them.

66. Because core, participant-facing documents describing the program and the premium differential omitted critical information regarding avenues to avoid the tobacco surcharge, Defendant fails to satisfy the notice requirements necessary to qualify for ERISA's safe-harbor protection. As a result, Defendant's imposition of the tobacco surcharge constitutes unlawful discrimination based on a health-status-related factor in violation of 29 U.S.C. § 1182(b)(1) and 42 U.S.C. § 300gg-4.

67. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's surcharge program does not satisfy the criteria that plans ***must*** comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe-harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiff and Class Members are entitled to relief under ERISA § 502(a)(3).

**COUNT III**
**BREACH OF FIDUCIARY DUTY (PLAN-LEVEL RELIEF)**
**(Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109)**

68. Plaintiff re-alleges and incorporates herein by reference allegations 1–56 of this Complaint.

69. At all relevant times, Meijer was the administrator of the Plan and was a fiduciary in that it exercised discretionary authority and control over the management of the Plan's assets.

70. ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

71. Instead of loyally and prudently acting in the best interests of Plan participants, Defendant chose, upon information and belief, to use Plan assets to exclusively benefit itself, to the detriment of the Plan and its participants, by unlawfully withholding millions of dollars in tobacco surcharges from participants' paychecks and using these funds to offset its own obligations to contribute to the Plan. The paystubs confirm that these surcharges were collected as before-tax deductions, alongside other contributions to the Plan, and thus were Plan assets from the moment of collection. Defendant breached its fiduciary duty by assessing and collecting the tobacco surcharge in violation of federal law and in violation of the terms of the Plan and then diverting those funds to reduce its own costs. The Plan should have received three funding streams: (1) employee premium contributions, (2) Meijer's contribution amount, and (3) the surcharge itself. But Defendant used the surcharge amounts to displace its own contributions. Upon information and belief, Meijer further profited by retaining those amounts in its own accounts, earning a float, and failing to remit the full employer contribution owed to the Plan.

72. Year after year, Defendant administered the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary of the Plan within the meaning of 29 U.S.C. § 1002(21), in that it exercised discretionary authority and discretionary control respecting the management and

administration of the Plan and its surcharge programs, including the decision not to offer a compliant wellness program. Defendant exercised discretionary authority by deciding how surcharge proceeds were handled, funneling the surcharge funds indirectly into its own coffers. Defendant also controlled whether participants would receive the "full reward" of avoiding the surcharge for the Plan year and failed to administer notices or alternatives required by ERISA's implementing regulations.

73. Upon information and belief, Defendant controlled and disseminated to all employees the Benefit Guides and other Plan communications discussing the premium differential but failed to provide necessary contact information or notify them of all the ways by which they could avoid the entire year of surcharges. Meijer further failed to conduct periodic or prudent reviews of its surcharge and wellness program, and the related communications, to ensure compliance with ERISA and its regulations. Instead, it administered a structurally defective wellness program, year after year.

74. Meijer breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. It acted disloyally by using ill-gotten funds to shrink its own financial contributions. It also failed to properly notify participants, year after year, of a compliant wellness program and failed to review the terms of the Plan to ensure compliance. These breaches are incompatible with ERISA's core fiduciary mandates.

75. As a result of the unlawful surcharges, Meijer enriched itself at the expense of the Plan. By deducting these amounts directly from participants' paychecks without properly administering a compliant wellness program, Meijer secured financial savings for itself while participants and the Plan bore increased costs. The structure of the program ensured that "all similarly situated individuals" could not obtain the "full reward" for the entire plan year, and

Defendant's deficient communications failed to notify participants of how to access a reasonable alternative standard. In this way, Defendant minimized the chances of participants taking action to avoid the surcharge and transformed what should have been an employer-funded wellness program into an unjust enrichment for itself, contrary to 29 U.S.C. § 1104(a)(1)(A).

76. Further, by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plan, Defendant caused the Plan to engage in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself—in violation of 29 U.S.C. § 1106(a)(1). Meijer is a party in interest, as defined under 29 U.S.C. § 1002(14), because it is both the Plan sponsor and a fiduciary exercising discretionary authority over the Plan's assets.

77. By retaining the amounts of the tobacco surcharges, Meijer increased its own corporate assets and saved the money it would otherwise have had to contribute to the Plan. In doing so, it dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing. The surcharges should have supplemented, not displaced, Meijer's contributions. By retaining and misusing the surcharges, upon information and belief, Meijer benefitted from the float at the expense of the Plan and its participants, leaving the Plan with less than what it should have received under its governing documents.

78. The Plan suffered direct financial losses as a result of Defendant's imposition of the tobacco surcharge through a noncompliant wellness program. These surcharges—collected as increased premium contributions—were used by Defendants to fund Plan operations, including payment of claims and administrative expenses, and thus enriched Defendant at the expense of the Plan because Defendant should have been making its contributions *in addition* to the surcharge

funds. These amounts represent Plan-level losses because they reflect unlawful contributions used by Defendants to offset their own contributions to the Plan. In other words, the Plan would have had more money in it if Defendant had made its agreed-upon contributions along with the funds generated by the surcharge.

79. Defendant breached its fiduciary duties by: administering a noncompliant Plan; failing to make available the "full reward" to participants; failing to properly disclose material information about the wellness programs to participants—specifically, the right to include their own physician in the development of an alternative standard—thereby depriving them of the ability to make informed choices; acting on behalf of a party whose interests were adverse to the Plan and its participants, in violation of ERISA § 406(b)(2); and failing to prudently review the terms of the Plan, the surcharge program, and the communications sent to participants, for year, to ensure compliance with ERISA's requirements. These breaches caused Plaintiff and the Class to incur unlawful surcharges that shifted costs to participants and away from Meijer. Had Defendant complied with its fiduciary duties, it would have noticed its deficiencies and taken steps to ensure participants had the information they needed.

80. Further, the SPD states that "[i]t is intended that the requirements of ERISA be satisfied with regard to the Plan." By structuring and administering a tobacco-use surcharge that failed to satisfy ERISA's wellness program rules under § 702, 29 U.S.C. § 1182, and 42 U.S.C. § 300gg-4 and the Final Regulations, Defendants violated both ERISA and the Plan's own terms requiring administration in compliance with ERISA.

81. Because the Plan collected and retained participant contributions imposed in violation of those provisions, Defendant breached its fiduciary duties under ERISA § 404(a)(1)(D)

to administer the Plan in accordance with its governing documents and applicable law, and caused losses to the Plan within the meaning of § 409(a).

82. As a direct and proximate result of these fiduciary breaches, members of the Class lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

83. Plaintiff is authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Defendant is liable to: make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through its violations, as alleged herein.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY (INDIVIDUAL RELIEF)**
**(Violation of ERISA §§ 404, 406 and 409, 29 U.S.C. §§ 1104, 1106 and 1109)**

84. Plaintiff re-alleges and incorporates herein by reference allegations 1–56 of this Complaint.

85. At all relevant times, Meijer was the administrator of the Plan and was a fiduciary in that it exercised discretionary authority and control over the management of the Plan's assets.

86. ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

87. Rather than acting solely for participants' benefit, Meijer administered a noncompliant wellness program that imposed unlawful tobacco surcharges, withheld millions of

dollars directly from participants' paychecks, and failed to ensure that participants received the full reward guaranteed under 29 C.F.R. § 2590.702(f)(4)(iv). Through these acts, Meijer enriched itself at participants' expense and deprived them of funds that should have remained in their possession or been offset through compliant premium adjustments.

88. Upon information and belief, Meijer designed, controlled, and disseminated the Benefit Guides and other Plan communications describing the tobacco surcharge. Those materials omitted critical information about participants' rights, specifically, the contact information for accessing a reasonable alternative standard and their entitlement to accommodation of a personal physician's recommendations in developing an alternative standard. Meijer also failed to conduct prudent reviews of its surcharge and wellness program, and Plan communications, to ensure ongoing compliance with ERISA and its implementing regulations.

89. By operating a wellness program that did not satisfy ERISA's nondiscrimination rules, Meijer acted disloyally and imprudently. It diverted participant funds for its own benefit, used those amounts to reduce its financial obligations to the Plan, and misled participants through incomplete or misleading communications. Each of these actions constituted self-dealing and a breach of Meijer's fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A)–(D) and 1106(b)..

90. By retaining the proceeds of unlawful tobacco surcharges rather than returning them to participants or crediting them toward future coverage, Meijer increased its own corporate assets and engaged in transactions that constituted a direct or indirect transfer of plan-related assets for the benefit of a party in interest—namely, itself—in violation of 29 U.S.C. § 1106(a)(1).

91. Defendant breached its fiduciary duties by: administering a wellness program that discriminated on the basis of health status; failing to provide accurate and complete disclosures concerning participants' rights and obligations under the program, thereby depriving them of the

ability to make informed choices; failing to prudently review and correct the program's structural defects despite repeated plan-year renewals; and acting in its own financial interest rather than in the exclusive interest of participants and beneficiaries. These breaches caused Plaintiff and the Class to incur unlawful surcharges that shifted costs to participants and away from Meijer. Had Defendant complied with its fiduciary duties, it would have noticed its deficiencies and taken steps to correct the behavior.

92. Further, the SPD states that "[i]t is intended that the requirements of ERISA be satisfied with regard to the Plan." By structuring and administering a tobacco-use surcharge that failed to satisfy ERISA's wellness program rules under § 702, 29 U.S.C. § 1182, and 42 U.S.C. § 300gg-4 and the Final Regulations, Defendants violated both ERISA and the Plan's own terms requiring administration in compliance with ERISA.

93. Because the Plan collected and retained participant contributions imposed in violation of those provisions, Defendant breached its fiduciary duties under ERISA § 404(a)(1)(D) to administer the Plan in accordance with its governing documents and applicable law, and caused losses to the Plan within the meaning of § 409(a).

94. As a direct and proximate result of these breaches, Plaintiff and similarly situated participants suffered concrete monetary losses in the form of unlawful surcharges deducted from their wages, as well as the loss of their statutory right to equal and nondiscriminatory treatment under ERISA.

95. Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiff and the Class seek individual equitable relief necessary to redress Defendant's fiduciary breaches, including but not limited to restitution of all unlawfully withheld surcharges; imposition of a constructive trust or equitable lien over funds wrongfully retained by Defendant; disgorgement of profits obtained

through use of those funds; a surcharge remedy to make participants whole; and declaratory and injunctive relief prohibiting Defendant from continuing to administer a noncompliant wellness program or collect unlawful surcharges in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class representative for the Class, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing Defendant to reimburse all persons who paid the unlawful and discriminatory surcharge;

D. A declaratory judgment that Defendant breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting a surcharge on participants without offering a reasonable alternative standard in violation of ERISA's anti-discrimination provisions and for failing to notify participants of an alternative standard, and for failing to adequately monitor the terms of the Plan, the surcharge, and the wellness program, as well as communications with participants, to ensure they complied with ERISA and the applicable regulations;

E. An Order requiring Defendant to provide an accounting of all prior payments of the surcharges under the Plan;

F. Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Plan and ordering Defendant to remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendant received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all surcharge amounts Defendant collected;

I. Surcharge from Defendant totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendant as a result of its collection of the unlawful and discriminatory tobacco surcharges;

J. Relief to the Plan from Defendant for their violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations; disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendant to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K. An award of pre-judgment interest on any amounts awarded to Plaintiff and the Class pursuant to law;

L. An award of Plaintiff's attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M. Any other relief the Court determines is just and proper.

Dated: November 5, 2025

Respectfully submitted,

**SIRI & GLIMSTAD LLP**

/s/ *Scott Haskins*

Scott Haskins
Oren Faircloth (*pro hac vice* forthcoming)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: shaskins@sirillp.com
E: ofaircloth@sirillp.com

*Attorneys for Plaintiff and the Proposed Class*