UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN TROUT,

Plaintiff,

v.

MEIJER, INC.,

Defendant.

Case No. 1:25-cv-1378

Hon. Hala Y. Jarbou

______________________________/

**OPINION**

Plaintiff Justin Trout brings this putative class action against Defendant Meijer, Inc., under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, alleging several violations related to Meijer's management of an employee health care plan. Trout brings claims for (1) imposition of an unlawful tobacco surcharge, in violation of the Public Health Service Act (PHSA);[1] (2) breach of fiduciary duty, in violation of ERISA; and (3) engagement in transactions prohibited by ERISA. The Court previously granted in part and denied in part Meijer's motion to dismiss. (4/23/2026 Order, ECF No. 25.) Trout subsequently filed an amended complaint (ECF No. 29), which Meijer now moves to dismiss (ECF No. 33). For the reasons explained below, the Court will grant Meijer's motion to dismiss in full.

**I. BACKGROUND**

The Court set out the facts in its prior opinion (ECF No. 24), and will only summarize them here. Trout is a Meijer employee who participates in the company's health care plan. The plan includes a "wellness program" under which employees pay an extra $20 in premiums unless they

[1] Because ERISA incorporates the relevant provision of the PHSA, *see* 29 U.S.C. § 1185d, Trout's claim for violation of the PHSA is (like his other claims) brought under the right of action created by ERISA.

certify that they do not use tobacco products. An employee who uses tobacco may avoid the surcharge by completing a tobacco cessation program. Trout claims that Meijer has failed to properly notify employees about individual accommodations regarding the tobacco surcharge, as required by the PHSA and its associated regulations.

Trout also alleges that Meijer has used the funds from the tobacco surcharge in an unlawful manner. Funding for the health care plan comes from two sources: employee premiums and Meijer's contributions. The plan documentation states that employees "may be required to contribute to the cost of coverage under the Plan as periodically determined by [Meijer] and communicated to Participants." (Am. Compl. ¶ 36, ECF No. 29.) Moreover, Meijer "will contribute to the trust fund the amount required to fund the present value of the benefit payments expected to be made to Participants amortized over a reasonable period of years, and to establish and accumulate such reserves as the Company deems reasonable and necessary under the Plan." (*Id.* ¶ 35). When Meijer collects the tobacco surcharge from employees, it uses those funds to directly offset its own contributions. In other words, the more it collects in surcharges, the less it contributes of its own funds, such that the plan ends up with the same amount of money regardless of how much is paid in surcharges. (*Id.* ¶ 42.) Trout alleges that this offset reduces the funds that would otherwise be available to the plan and ultimately increases employee premiums, which violates Meijer's fiduciary duties.

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim if it does not "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and

conclusions. *Id.* at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.

When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017). The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

## III. ANALYSIS

Trout challenges two actions by Meijer: collecting a tobacco surcharge without providing the notice required by regulation, and using the funds from that surcharge to reduce Meijer's contributions to its health care plan. The Court previously dismissed Trout's claims regarding the latter charge, but allowed him to proceed on his inadequate-notice claim. For the reasons explained below, Trout again fails to state a claim regarding Meijer's use of the surcharge to offset its contributions. Moreover, the Court now finds that Meijer is entitled to dismissal of Trout's notice-related claim as well.

### A. Notice Requirement

The PHSA provides that if an employer's health plan includes a wellness program "based on an individual satisfying a standard that is related to a health status factor," the program must comply with certain specified requirements. 42 U.S.C. § 300gg-4(j)(3). Meijer's tobacco

surcharge involves a standard related to a health status factor (tobacco usage), so it must meet those requirements. One of those requirements is that the program allow for a "reasonable alternative standard" that accommodates people who have medical conditions that make it "inadvisable" or "unreasonably difficult" to complete the wellness program. *Id.* § 300gg-4(j)(3)(D)(i)(I), (II). Moreover, the plan materials must disclose "the availability of a reasonable alternative standard." 42 U.S.C. § 300gg-4(j)(3)(E). The Department of Labor (DOL) regulation implementing § 300gg-4 specifies that any such disclosure must "includ[e] . . . a statement that recommendations of an individual's personal physician will be accommodated." 29 C.F.R. § 2590.702(f)(4)(v). Meijer's plan documents do not contain such a statement.

The Court previously held that Congress has delegated to the DOL the power to "fill up the details" of the statutory scheme at issue. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024). Thus, the regulations are permissible if they are an exercise of "reasoned decisionmaking within th[e] boundaries" of that delegation. *Id.* (internal quotation marks omitted). Meijer argues that § 2590.702(f)(4)(v) exceeds the DOL's authority because it conflicts with the language of § 300gg-4. *See Meade Twp. v. Andrus*, 695 F.2d 1006, 1009 (6th Cir. 1982) ("If an administrator promulgates a regulation which is inconsistent with the plain language of the governing statute, we are constrained to declare that regulation invalid."). The Court previously rejected Meijer's argument that the regulatory provision as a whole conflicts with the statute. But Meijer now frames its argument as an as-applied challenge, contending that the regulation exceeds the DOL's authority as applied to Meijer's individual case. *See, e.g.*, *E.P.A. v. EME Homer City Generation, L.P.*, 572 U.S. 489, 523–24 (2014) (recognizing the possibility of as-applied challenge to agency statutory interpretation). The Court finds this argument persuasive.

The statute requires an employer who offers a wellness program related to a health status factor—e.g., a tobacco surcharge—to provide a reasonable alternative that accommodates individual medical needs—e.g., a tobacco cessation program—and disclose that alternative to plan participants. The regulation requires that the employer not only disclose the reasonable alternative, but also disclose that a physician's recommendation will be accommodated. Essentially, the notification to participants implies that if the proffered alternative does not accommodate their needs, they are entitled to an alternative to the alternative. Meijer contends that any potential medical needs would not pose a barrier to participation in a tobacco cessation program, which is essentially a form of counseling rather than a medical treatment. Thus, there is no reason why anyone would need an accommodation from a cessation program, and no reason to notify anyone about the possibility of such an accommodation.

Indeed, the DOL regulation at issue explicitly recognizes that a tobacco cessation program is the sort of program for which Meijer need not offer any additional accommodation. Specifically, the regulation lists a tobacco cessation program as an example of a wellness program that does *not* require a participant to satisfy a standard related to a health status factor. *See* 29 C.F.R. § 2590.702(f)(1)(ii)(D). So if Meijer offered the tobacco cessation program as a standalone wellness program (rather than as an alternative to the surcharge), it would not be required to offer any accommodations. Accordingly, when Meijer offers the tobacco cessation program as an alternative, it should not need to *further* accommodate any individual medical needs by providing an alternative to that alternative. And if Meijer does not need to accommodate individual needs, it is unreasonable to require Meijer to notify participants that it will accommodate their individual needs.

Trout's primary response is that the Court already decided this issue in its opinion on Meijer's previous motion to dismiss, and it is unnecessary to revisit that decision. The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). But this doctrine merely "directs a court's discretion[;] it does not limit the tribunal's power." *Id.* Thus, the Court retains the power to revisit its prior holdings if necessary. Moreover, adopting Meijer's argument here does not contradict the Court's prior reasoning. Previously, the Court held that the regulatory provision at issue was not on the whole an unreasonable interpretation of the statute. Now the Court holds that the provision *is* unreasonable as applied to Meijer. Those two holdings are mutually consistent. *See EME*, 572 U.S. at 524 ("The possibility that the rule, in uncommon particular applications, might exceed EPA's statutory authority does not warrant judicial condemnation of the rule in its entirety.").

Trout also argues that the statute leaves open the possibility of DOL imposing additional requirements on employers beyond those explicitly set out in the statute. He points to the following language: "The full reward under the wellness program shall be made available to all similarly situated individuals. For such purpose, *among other things*: . . . ." 42 U.S.C. § 300gg-4(j)(3)(D) (emphasis added). But DOL cannot rely on the phrase "among other things" in this provision to impose additional notice requirements because the statutory notice requirement is contained in a different provision, subsection (j)(3)(E). Subsection (D) sets out the substantive requirements of a reasonable alternative standard, but there is no dispute that Meijer's program meets that substantive standard—the only dispute is about the notice requirement. Moreover, even if the DOL were permitted to impose additional notification requirements, those requirements would have to be reasonable in light of the statutory language and purpose. And as discussed above,

requiring Meijer to disclose that it will accommodate individual needs when it in fact has no obligation to do so is unreasonable.

Trout contests this last point, arguing that Meijer *is* required to provide additional individual accommodations beyond the tobacco cessation program. In Trout's view, if an employee's physician recommends that some program other than a tobacco cessation program would be better suited to the person's needs, Meijer must accommodate that recommendation by providing such a program. But that requirement is found nowhere in the regulation or statute. The regulation provides the following:

> If an individual's personal physician states that a plan standard . . . is not medically appropriate for that individual, the plan or issuer must provide a reasonable alternative standard that accommodates the recommendations of the individual's personal physician with regard to medical appropriateness.

29 C.F.R. § 2590.702(f)(iv)(C)(4). The Court interprets this provision as giving a physician veto power over a particular program based on the incompatibility of the program with a person's health. If the employer-offered alternative is compatible with the person's health but is simply inadequate or ineffective in the view of the person's physician, the program is still compliant with the regulation. Moreover, if the Court were to adopt Trout's interpretation of the regulation, it would find the regulation inconsistent with the statute. The statute only requires that an employer provide a reasonable alternative to a program when "it is medically inadvisable" or "unreasonably difficult due to a medical condition to" participate in that program. 42 U.S.C. § 300gg-4(j)(3)(D)(i). And the only role the statute recognizes for an individual's physician is to "verif[y] . . . that a health status factor makes it unreasonably difficult or medically inadvisable for the individual to satisfy or attempt to satisfy the otherwise applicable standard." *Id.* § 300gg-4(j)(3)(D)(ii). The statute does not guarantee that the employer will provide whatever program an individual's physician suggests.

Trout also argues that it is not sufficient for Meijer to merely mention the existence of a particular alternative—i.e., the tobacco cessation program—because that program may still be unreasonable, even if it is not based on a health status factor. For example, Trout notes, an alternative might be unreasonable if it is conducted only at an extremely inconvenient time. *See* 29 C.F.R. § 2590.702(f)(4)(iv)(C)(2). That much is true, but if an alternative involves an unreasonable time commitment, a person does not need a statement from their physician in order to receive an accommodation. Rather, a physician recommendation is only relevant when the alternative is unreasonable due to an individual's health. And the tobacco cessation program is not such an alternative.

In sum, the notification requirement is an unreasonable interpretation of § 300gg-4 as applied to Meijer's health plan, so Trout has failed to state an ERISA claim for violation of the PHSA.

**B. Use of Tobacco Surcharge**

Trout also alleges that Meijer violated its fiduciary duties by using the tobacco surcharge to offset its contributions. Section 404 of ERISA provides that

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> (A) for the exclusive purpose of:
>
> (i) providing benefits to participants and their beneficiaries; and
>
> (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]

29 U.S.C. § 1104(a)(1). A claim for breach of fiduciary duty may be brought under either section 502(a)(2) or 502(a)(3) of ERISA. The Court will consider each provision in turn.

**1. Section 502(a)(2)**

Section 502(a)(2) of ERISA provides that a plan participant may bring a civil action "for appropriate relief under section 1109." 29 U.S.C. § 1132(a)(2). Section 1109, in turn, provides that a fiduciary who breaches their duties "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109(a). Trout contends that Meijer violated its fiduciary duties by using the money collected via the tobacco surcharge to offset its own contributions. If Meijer had instead merely added the surcharges to the plan, the plan would have had more assets—i.e., Meijer's contributions *plus* the surcharges.[2] Further, he alleges that employee contributions are calculated based on the plan's assets at the time, so placing more assets in the plan would indirectly reduce employee premiums.

In its prior opinion, the Court noted that the mere fact that Meijer could have taken an action that increased plan assets does not mean the failure to do so violates a fiduciary duty. "Meijer could always voluntarily add funds to the plan from its own assets, but the failure to do so does not constitute harm to the plan unless Meijer had an affirmative duty to contribute those assets." *Trout v. Meijer, Inc.* (*Trout I*), No. 1:25-cv-1378, 2026 WL 1098213, at *11 (W.D. Mich. Apr. 23, 2026). Trout's amended complaint, like his original complaint, fails to identify any provision of the plan documentation that obligates Meijer to add the tobacco surcharges to the plan in addition to the funds it would have otherwise contributed. Even if using the surcharges as offsets

[2] Trout also argues that the plan would have had additional assets had Meijer "not collected the unlawful surcharges in the first place and made its full actuarially-determined contribution." (Am. Compl. ¶ 43.) But the Court fails to see how *not* collecting the surcharge would increase plan assets.

functionally reduces Meijer's contribution to the plan, the documentation does not require Meijer to make a set contribution, so reducing its contribution is permissible.

In essence, Trout's argument is that the surcharges are plan assets, Meijer is required to use plan assets for the benefit of participants, and the use of surcharges to offset its own contributions does not benefit participants. But this is the same argument the Court rejected in *Donelson v. Meijer, Inc.*, 826 F. Supp. 3d 898, 901 (W.D. Mich. 2025). At issue there was whether Meijer could use funds that had been forfeited by former employees to offset its own contributions to its employer pension plan, or whether it was required to add the forfeited funds on top of its contributions. As the Court explained, on its surface ERISA's fiduciary duty appears to be "limitless," requiring employers to use all plan assets to benefit participants as much as possible. But in actuality, "a fiduciary's duties are only to provide beneficiaries the specific benefits promised in the plan." *Donelson*, 826 F. Supp. 3d at 901. So if Meijer's choice to use tobacco surcharges to reduce its own contributions does not impact the benefits that the plan participants ultimately receive—and there is no allegation that it does—Meijer has not violated its fiduciary duties.

In fact, though Trout characterizes Meijer's conduct as contrary to the spirit (if not the letter) of the plan documentation, the company's actions appear perfectly in accord with its obligations. Meijer is required to contribute to the plan whatever funds are necessary to ensure the plan will provide all promised health care benefits. (Am. Compl. ¶ 35 (Meijer "will contribute to the trust fund the amount required to fund the present value of the benefit payments expected to be made to Participants amortized over a reasonable period of years, and to establish and accumulate such reserves as the Company deems reasonable and necessary under the Plan.").) If the tobacco surcharges are added directly to the plan, then the amount of money necessary to keep

the plan afloat is reduced by the amount of those surcharges. So it makes sense for Meijer to reduce its own contributions by that amount.[3]

In addition, Trout has not shown that Meijer's use of the surcharge harmed the plan. As the Court explained previously, "to state a claim under section 502(a)(2), Trout must allege that Meijer's collection of surcharges either caused a monetary loss to the plan or caused Meijer to obtain profits that should have instead gone to the plan." *Trout I*, (Trout I), 2026 WL 1098213, at *11. A choice that indirectly causes employees to pay higher premiums may harm those employees, but it does not harm the plan. And while reducing plan assets might constitute harm if there was a significant risk that the plan would be unable to pay out promised benefits, *see id.*, Trout alleges no facts suggesting that such a risk is present here. Because Trout alleges no injury to the plan, he has not stated a claim under 502(a)(2), and lacks standing to bring such a claim. *Id.* at *11-12; *see Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012) (standing doctrine requires plaintiff to "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief").

**2. Section 502(a)(3)**

Section 502(a)(3) of ERISA provides that a plan participant may bring suit for equitable relief regarding an employer's practices that "violate[] any provision of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Plan participants may seek individualized relief (not just plan-based relief) under section 502(a)(3) for violations of fiduciary duty. *See Varity Corp. v. Howe*, 516 U.S. 489, 507–15 (1996). Because relief under section 502(a)(3) may be individualized, it follows that the harms alleged may also be individualized.

[3] Trout argues that the cited plan provisions do not specify whether Meijer should calculate its necessary contribution before or after employees have contributed their share to the plan. But Meijer's obligation is plainly dependent on employee contributions, or else Meijer would always be required to fully fund the plan and the employee contribution provision would be meaningless.

But Trout's 502(a)(3) claim fares no better than his 502(a)(2) claim. The bottom line is the same: Meijer did not violate its fiduciary duties by offsetting its contributions because no provision of the plan obligated it to contribute a specific amount. Trout's argument to the contrary would produce absurd results. Note that the plan vests discretion in Meijer to determine how much employees pay in premiums each year and how much Meijer contributes. If, as Trout argues, Meijer must use this discretion to maximally benefit employees, then its only option would be to require zero premiums from employees and fully fund the plan from corporate assets. But such a result would undermine the entire structure of the plan, which is premised on the employer and employees jointly contributing. To avoid this result, one must recognize that Meijer's failure to make additional voluntary contributions to the plan does not violate its fiduciary duties even if the indirect result is that employees pay more in premiums than they otherwise would.

Trout points to *Knudsen v. MetLife Group, Inc.*, where the Third Circuit suggested that employees might suffer an injury if they were forced to pay higher health care premiums due to the employer's choice to retain funds rather than deposit them in the plan. 117 F.4th 570, 579–80 (3d Cir. 2024). The Court agrees that increased premiums are an injury that would confer standing to raise a 502(a)(3) claim. But the issue here is whether the decision to raise premiums violates any fiduciary duty; after all, an injury without an accompanying legal violation does not support a claim. As *Knudsen* acknowledged, increased premiums would only support an ERISA claim if the employer charged "more in premiums than is allowed under Plan documents." *Id.* at 580. Here, there is no reason to think Meijer's potential increase in premiums would contradict the plan documents. Thus, Trout has not stated a claim for breach of fiduciary duty.

**3. Failure to Monitor**

Trout also alleges that, insofar as the decisions regarding the plan were made by fiduciaries under Meijer's supervision, Meijer breached its own fiduciary duties by failing to monitor its

supervisees. "There can be no doubt that the ERISA statutory scheme imposes a duty to monitor upon fiduciaries when they appoint other persons to make decisions about the plan." *In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 832 (S.D. Ohio 2004). But because Trout has not alleged any underlying breaches of fiduciary duty, he has also not alleged a corresponding failure to monitor. *See Davis v. Magna Int'l of Am., Inc.*, No. 20-11060, 2023 WL 3821807, at *8 (E.D. Mich. June 5, 2023) ("[A] failure to monitor claim does not survive absent a predicate breach of fiduciary duty by a monitored fiduciary." (quoting *Saumer v. Cliffs Nat. Res. Inc.*, 2016 WL 8668509, *8 (N.D. Ohio Apr. 1, 2016))).

**4. Prohibited Transactions**

Finally, Plaintiff argues that Meijer engaged in transactions prohibited by section 406 of ERISA by using the surcharges to offset its plan contributions. Section 1106 provides that, subject to certain exceptions, "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(D). But Plaintiff's prohibited transactions claim is foreclosed by the Sixth Circuit's decision in *Holliday v. Xerox Corp.*, 732 F.2d 548 (6th Cir. 1984). As this Court has written:

> [In *Holliday*], the Sixth Circuit reasoned that the employer's transfer of pension funds to reduce its own monetary obligations did not violate an ERISA provision mandating that "the assets of a plan shall never inure to the benefit of any employer." 29 U.S.C. § 1103; *Holliday*, 732 F.2d at 551. It explained that the transfer was not "a prohibited 'benefit'" because the employer "could have accomplished the same result by" amending the retirement plan. *Holliday*, 732 F.2d at 551. In other words, the provisions of ERISA that limit an employer's ability to benefit from a fiduciary's actions are inapplicable when the employer could achieve the same benefit via plan amendment. Thus, because Meijer could have implemented an amendment requiring forfeitures to go toward employer contributions, it could also achieve that same outcome by acting as a fiduciary without violating ERISA.

*Donelson*, 826 F. Supp. 3d at 905. The same reasoning applies here: because Meijer could have amended the plan to require that tobacco surcharges be used to offset its own contributions, it could also do the same thing using its discretionary authority under the plan.

## IV. CONCLUSION

The Court will grant Meijer's motion and dismiss all of Trout's claims. An order and judgment will enter in accordance with this Opinion.

Dated: September 1, 2026

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE